**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

SOUTHERN STATES COOPERATIVE, INC.,

Plaintiff,

v. Civil No. 3:05cv35

CARGILL, INC.,

Defendant.

**MEMORANDUM OPINION**

This matter is before the Court on the defendant's Motion For Stay In View Of Ongoing Settlement Discussions Or, In The Alternative, Transfer To the Eastern District Of Pennsylvania For Consolidation With The First-Filed Case Involving The Same Parties And The Same Dispute (Docket No. 11). For the reasons outlined below, the defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a) will be granted. Accordingly, the motion to stay will be denied as moot.

**BACKGROUND**

The plaintiff, Southern States Cooperative, Inc. ("Southern States"), is a Virginia corporation with its principal place of business in Richmond, Virginia. As a member-owned farmers cooperative, Southern States is primarily engaged in the manufacture, processing, and distribution of feed, seed, fertilizer, and various other farm supplies. In addition, Southern States operates and licenses more than 1200 retail stores in

twenty-three states. The defendant, Cargill, Inc. ("Cargill"), is a Delaware corporation with its principal place of business in Minnetonka, Minnesota. Cargill is primarily engaged in the manufacturer, distribution, and sale of agricultural products, including animal feed.

In 2002, Southern States and Cargill each purchased a business unit from Agway, Inc. ("Agway"), while Agway was undergoing a dissolution in bankruptcy. As part of their respective purchases, Southern States and Cargill purportedly acquired the right to use one of Agway's trademarks, "AGWAY." Therefore, there arose disputes respecting the extent of the rights acquired. A brief history of Agway's use of its AGWAY mark is helpful to an understanding of the dispute which brought the parties into litigation.

From 1964 until 2002, Agway, an agricultural cooperative, owned and operated a number of business lines which utilized its "AGWAY" trademark. Pl.'s Compl. at 3. Specifically, Agway licensed and ran a chain of retail stores and acted as a wholesale distributor of farming-related products bearing the AGWAY trademark to these stores and other retail outlets. Id. In addition, Agway operated several mills for the manufacture of various kinds of animal feed. Over the course of almost forty years, the AGWAY trademark is said to have become "famous and distinctive." Id.

After incurring significant financial losses, Agway filed a voluntary Chapter 11 petition with the United States Bankruptcy Court for the Northern District of New York, on October 1, 2002.[1] Under the supervision of the bankruptcy court, Agway sold its major business units to three purchasers. First, Cargill purchased Agway's animal feed and nutrition line of business and, says Cargill, the right to use the AGWAY trademarks relating thereto. Shortly thereafter, Southern States purchased Agway's wholesale retail distribution line and, says Southern States, the right to use the AGWAY trademarks for its retail merchandise operations. As part of this wholesale distribution line, Agway - and later Southern States - distributed to a dealer network of participating retail outlets implements, tools, and other farm supplies. Finally, the Agway energy business was purchased by an entity not involved in the litigation between Cargill and Southern States.

As the parties point out in their briefs, this action arose from the apparent overlap of the AGWAY trademark rights acquired as part of the asset acquisitions in 2002 by Southern States and Cargill, respectively. Sometime in 2004, Cargill discovered that Southern States was advertising animal feed products bearing the AGWAY mark at Southern States' retail outlets in Pennsylvania. Cargill asserts that the advertising constituted a violation of the trademark rights which it had acquired as part of the 2002 purchase

---

[1] Agway's principal place of business was Syracuse, New York.

of Agway's feed and nutrition business.[2] Accordingly, Cargill filed an action in the Eastern District of Pennsylvania, on December 22, 2004 (the "Pennsylvania Action"). In its three-count complaint, Cargill alleged, inter alia, various types of trademark infringement under Pennsylvania common law and the Lanham Act, 15 U.S.C. § 1125. Specifically, Cargill alleged, in pertinent part, as follows:

> Defendant's (Southern States') adoption and use of the mark AGWAY in connection with the marketing, promotion, and delivery of animal feeds infringes Plaintiff's exclusive rights in the AGWAY mark, and such conduct dilutes the distinctive quality of Plaintiff's AGWAY mark by diminishing Plaintiff's ability to identify and distinguish its goods, in violation of 15 U.S.C. § 1125(c).

Def.'s Ex. A.

On January 18, 2005, less than one month after Cargill filed the Pennsylvania Action, Southern States filed this action against Cargill in this Court (the "Virginia Action"). According to Southern States, Cargill, by using the AGWAY trademark in advertising and promoting its animal feed distribution business, is infringing on Southern States' exclusive right to use the AGWAY trademark for retail general merchandise store services. See Pl.'s Compl. at 4-5. In seeking an injunction and money damages,

[2] Memorandum In Support Of Defendant's Motion For Stay In View Of Ongoing Settlement Discussions, Or, In The Alternative, Transfer To the Eastern District Of Pennsylvania For Consolidation With The First-Filed Case Involving The Same Parties And The Same Dispute at 3 ("Def.'s Mem. at __").

Southern States, as has Cargill in the Pennsylvania Action, takes the position that the defendant has violated provisions of the Lanham Act.

In support of the present motion, Cargill first argues that this action presents a claim that is identical to the one in the Pennsylvania Action. Def.'s Mem. at 5. Accordingly, Cargill argues that this action should have been presented as a compulsory counterclaim in the Pennsylvania Action. Asserting that the Pennsylvania Action and the Virginia Action are "mirror images" of each other and because Cargill was the first to file, Cargill argues that this action should be transferred to the Eastern District of Pennsylvania for consolidation as a compulsory claim in the Pennsylvania Action. See id. Alternatively, Cargill contends that consideration of the relevant factors under 29 U.S.C. § 1404(a) militates in favor of transfer to that district.

Southern States takes the position that the actions are not mirror images of each other, and that it was not required to assert its trademark infringement claim against Cargill as a compulsory counterclaim in the Pennsylvania Action.[3] Further, Southern States contends that Cargill's claim of trademark infringement in the Pennsylvania Action relates to an entirely different set of AGWAY trademarks than the ones that are at issue in the Virginia Action.

---

[3] Southern State's [sic] Memorandum In Opposition To Cargill's Motion To Stay Or, In The Alternative, Transfer at 4-7 (Pl.'s Mem. at __").

See id. As to Cargill's plea for transfer under 28 U.S.C. § 1404(a), Southern States argues that consideration of the pertinent factors militates in favor of allowing this action to proceed in this Court.

**DISCUSSION**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer under § 1404(a) is only permissible if the alternative forum would have been a proper venue initially. See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3845, at 341-42. Further, a court cannot transfer a case to a court that would lack subject matter and/or personal jurisdiction. See id.

The decision to transfer an action to another district court "is committed to the sound discretion of the district court." One Beacon Ins. Co. V. JNB Storage Trailer Rental Corp., 312 F. Supp. 2d 824, 828 (E.D. Va. 2004). In exercising its discretion, a court should consider the following factors:

> (1) ease of access to sources of proof; (2) the convenience of the parties and witnesses; (3) the cost of obtaining the attendance of the witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interest of justice.

Id. (quoting BHP Int'l Inv., Inc. v. Online Exch., Inc., 105 F. Supp. 2d 493, 498 (E.D. Va. 2000)). All factors, if applicable, are entitled to consideration, but each factor is not accorded equal weight. See Wright, Miller, and Cooper, § 3849, at 398. Indeed, the convenience of a particular venue for a majority of witnesses can be determinative, as can a finding that a particular venue furthers the interest of justice. See id.

Consideration of the first factor, ease of access to sources of proof, does not weigh in favor of either venue. Although Cargill makes the argument that most of the witnesses and documents supporting its claim to the AGWAY trademark are located in Pennsylvania and New York, Southern States makes the equally persuasive argument that its supporting documents and witnesses are located at its company headquarters in Richmond, Virginia. Therefore, as Southern States notes in its brief, "the access of proof is in equipose and this factor [alone] does not weigh in favor of a transfer." Pl.'s Mem. at 10.

The second factor, the convenience of the parties and the witnesses, weighs in favor of transferring this case to the Eastern District of Pennsylvania. Although the parties both have equal claims with respect to the convenience of their chosen venues, it is apparent that the majority of the third-party witnesses in this case - most of whom are former Agway employess, who are located in Pennsylvania and New York - would be more inconvenienced by having

to appear in this district, rather than in the Eastern District of Pennsylvania.[4]

The third factor to be assessed is the cost of obtaining the attendance of witnesses. For the same reasons cited above, consideration of this factor weighs in favor of transfer.

The fourth factor, the availability of compulsory process, also favors transfer to the Eastern District of Pennsylvania. A number of third-party witnesses are within the subpoena power of the Eastern District of Pennsylvania and beyond the reach of this Court. This factor, then, favors transfer on the record in this action.

As for the fifth factor, the interest of having local controversies decided at home, the Court finds that both parties are on equal footing. Hence, the fifth factor is not implicated. Nor is the sixth factor, judicial familiarity with the substantive law, because the driving law is federal in origin.

The seventh factor is the "interest of justice." And, of course, this factor "may be decisive in ruling on a transfer motion." Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3854, at 439-40. Although somewhat nebulous on its face, the interest of justice analysis seeks principally to avoid a "multiplicity of litigation from a single transaction."

---

[4] A substantial number of former Agway employees, several of whom may be called as witnesses in this matter, are now under the employ of Cargill in Pennsylvania.

Id. at 441. Thus, where the parties are essentially identical and the claims involve overlapping events and documents, transfer and consolidation generally are thought to be in the interest of justice. See Season Savings Bank, FSB v. Foremost Fin. Serv. Corp., 1989 U.S. Dist. LEXIS 18062, *4 (E.D. Va. 1989). And, that is true even though the issues may not be identical.[5] See id.

"Although the burden is generally on the moving party to establish that there should be a change of forum, when two courts have concurrent jurisdiction over an action involving the same parties and issues, the forum of the first-filed action has priority." Wright, Miller & Cooper, § 3854, at 439-40. That approach is followed so that the problems commonly associated with overlapping litigation - most notably, the burden of unnecessary costs and the risk of inconsistent results - can be avoided. Harve Benard Ltd. V. Nathan Rothschild K.I.D. Int.'s, Inc., 2003 U.S. Dist. LEXIS 2421, at *18 (S.D.N.Y. February 10, 2003). That approach is appropriate even if the issues are not the same, and, where, as here, the continuation of two different actions in different fora presents a risk of conflicting, or partially

---

[5] In this case, the parties involved are identical and the claims involve overlapping events and documents. This does not mean, however, that the issues are identical, and the Court notes Southern States' well-supported argument that there are fundamental differences between the trademarks at issue in each action. However, it is not necessary to find that this action constitutes a compulsory counterclaim in order to conclude that the interest of justice is served by transfer. Hence, no such finding is made.

conflicting rulings. And, that approach is especially appropriate where both courts would be required to devote judicial resources to similar, even if not identical, issues, such as the regulation of discovery or other aspects of case management.

Considering that Southern States filed a similar trademark infringement action against Cargill in this Court less than one month after Cargill had filed the Pennsylvania Action against Southern States, the seventh factor weighs in favor of granting the motion to transfer for two principal reasons.

First, the costs associated with litigating these related, but not identical, trademark infringement issues in two separate proceedings would impose an undue burden on the parties, the third-party witnesses, and the courts. Second, resolution of each action will necessarily hinge on the determination of the respective trademark rights acquired by the parties. Thus, there is a significant risk of inconsistent results if both actions were to proceed in different courts. It is in the interest of justice, therefore, to transfer this action to the Eastern District of Pennsylvania.

**CONCLUSION**

For the reasons set forth above, the defendant's Motion For Stay In View Of Ongoing Settlement Discussions Or, In The Alternative, Transfer To the Eastern District Of Pennsylvania For Consolidation With The First-Filed Case Involving The Same Parties

And The Same Dispute (Docket No. 11) is granted to the extent that it requests a transfer[6] and is denied to the extent that it requests a stay. Accordingly, the Clerk will be directed to transfer this action to the Eastern District of Pennsylvania for all further proceedings.

The facts and legal contentions are adequately presented in the materials before the Court and oral argument would not aid the decisional process.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

__________/s/_______________________
Robert E. Payne
United States District Judge

Richmond, Virginia
Date: ____________

[6] Whether to consolidate the actions for trial is a matter best entrusted to the discretion of the transferee court.